## MANTLE LAMP CO. OF AMERICA v. MONTGOMERY WARD & CO., Inc.
### No. 6057.

Circuit Court of Appeals, Seventh Circuit.
June 18, 1937.

Rehearing Denied Sept. 15, 1937.

George I. Haight and W. H. F. Millar, both of Chicago, Ill., for appellant.

Wm. Nevarre Cromwell and James L. McManus, both of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and MA· JOR, Circuit Judges.

SPARKS, Circuit Judge.

This appeal involves the validity and infringement of two United States patents. The first is re-issue patent No. 18,061 to Davis, issued May 5, 1931, on an application filed January 9, 1931. It is based on original patent No. 1,744,298, issued to Davis on January 21, 1930, on an application filed July 25, 1927. The second is patent No. 1,349,010, issued to Spangler on an application filed June 1, 1918. Prior to this action both patents in issue had been assigned to appellant. The defenses were invalidity and noninfringement. The court found the facts specially, rendered conclusions of law thereon favorable to appellee, and dismissed appellant's bill for want of equity.

The alleged invention of Davis relates to burners for blue-flame lamps of the wick type in which an incandescent mantle is used, and generally consists in improvements of the parts of such a burner whereby it becomes possible to obtain a full light from the lamp in a short period of time, and to reduce the creeping or working-up tendency of the flame, making the lamp more stable and reliable in its operation. The claims of the reissue which are in issue are 18, 37, 38, 40 and 41.[1]

The following facts were found by the court and are supported not only by substantial evidence, but by the greater weight of all the evidence. Blue flame kerosene

---

[1] "18. A lamp of the blue-flame wick type, including a wick, means for supplying air to both sides of said wick, a deflector to so control the flow of air to the combustion zone that the flame of the lamp will be substantially spaced from the wick tube of the lamp."

"37. A blue-flame oil burner of the wick type having a burner cone and an outer wick tube, and an air-guiding baffle disposed with its upper end below the upper end of the wick when the wick is raised to its operative position and in such relation to the burner cone and the outer wick tube as to produce between it and the burner cone a major air passage, and between it and the outer wick tube a minor air passage, which leads to the exposed surface of the wick and through which a very small current of heat-insulating air may flow to prevent overheating of the outer wick tube."

"38. A blue-flame oil burner of the wick type having a burner cone and an outer wick tube, and a flame-protecting baffle disposed with its upper end below the upper end of the wick when the wick is raised to its operative position and in such relation to the burner cone and the outer wick tube as to produce between it and the burner cone a major air passage, and between it and the outer wick tube a minor air passage which leads to the exposed surface of the wick and

wick burners, for incandescent lighting purposes, have been known for many years and constitute an art dating from some time in the nineteenth century. Such lamps are subject to certain deficiencies caused (1) by the creeping up or increase of the flame, and consequent smoking due to overheated wick tubes surrounding the wick and causing over-vaporization; (2) by the condensation of kerosene vapor upon cool parts of the burner, causing wetness of, and dirty deposits on, the burner; and (3) by smoking of the flame and deposits of carbon on the mantle, caused by turning the wick too high upon lighting and consequent over-vaporization upon the approach of the lamps to thermal or stabilized equilibrium. Those engaged in the art had long known of these deficiencies, and had provided structures for overcoming the creeping up of the flame and over-condensation. However, the defect occurring during the approach to thermal equilibrium has not yet been fully solved and can be overcome only by a proper manipulation of the wick.

The earlier burners had a flame flange attached to the upper end of the outer wick tube, serving the purpose of preventing the flame from being blow out on the side of the wick and permitting the root of the flame to creep down the side of the wick, thereby increasing the size of the flame. This flame and its vapor zone rested upon the flange, causing it to have a high temperature above the lowest boiling point of kerosene and causing over-vaporization of the kerosene on the wick and the consequent creeping up of the flame.

Prior inventors had overcome this creeping up in two ways. (1) They provided a small air space in the flange, or supported the flange from the wick tube, but slightly spaced from it, to permit a small current of air to pass up adjacent the outer wick tubes. This current was not of suf-

ficient strength to blow out the flame on the side of the wick, but was sufficiently strong to prevent the flame or its vapor zone from impinging upon the outer wick tube or flange, it being slightly spaced therefrom. (2) They omitted the flange and built a vertical sleeve around the vapor wick tube, attached thereto below the top of the tube, to form a chamber that was small in size and without sufficient air to support combustion adjacent the wick tube, thereby preventing the flame from burning in the chamber.

Later inventors, but prior to Davis, suggested and disclosed the removal of these flame flanges from the outer wick tube, and showed their support, not from the outer wick tube where there might be a possibility of heat conduction, but from some other part of the burner so that heat could not be conducted to the outer tube.

In this state of the art, as it existed prior to 1910, Davis attempted to overcome the deficiencies of this kind of lamps, still retaining the flame flange attached to the outer wick tube. His work was not entirely successful until the development of the device covered by the reissue patent in 1927. The reissue disclosure consists of the use of a vertical baffle that is practically closed at its lower end adjacent the upper end of the outer wick tube by a flange mounted on the wick tube. This baffle and its mounting form a chamber about the upper end of the wick tube that is too small and lacks sufficient air to support combustion within it. The small air space at the bottom of the chamber has been reduced from .015 of an inch, as mentioned in the patent, to .005 of an inch in the actual structure. Neither opening will admit sufficient air to support combustion within the chamber around the flange or wick tube. This spacing serves solely as a heat insulating air space between the baffle or outer

through which a very small current of heat-insulating air may flow to prevent overheating of the outer wick tube."

"40. A blue-flame oil burner of the type having a wick, a burner cone, an outer wick tube, and a flame-protecting baffle, said baffle being spaced from said outer wick tube by a small heat-insulating air space through which a limited quantity of air flows to the outer exposed surface of the wick, the air for sustaining combustion flowing exterior of said baffle and being so directed to the flame burning on the outer exposed sur-

face of the wick that said flame is prevented from burning down and coming in contact with the outer wick tube."

"41. A burner of the blue flame type, including an outer wick tube, a wick having when raised to operative position a flameless exposed side area proximate and a flame area somewhat remote from said outer wick tube, and an air restricting baffle surrounding and heat insulated from said outer wick tube and operating to so limit the flow of air within it that the flame is maintained only on the flame area of the wick."

wall of the chamber, and the wick tube or its flange.

Appellee's accused structure is of the detached flame flange type and shows a flame flange detached from the outer wick tube and supported by legs from the burner basket of the lamp. It is positioned slightly above the wick tube and is horizontally spaced from it. This spacing varies from nothing to 1/32 of an inch. It will not permit a sufficient amount of air to flow through it to blow out the flame on the side of the wick, but the force of the air is sufficient to prevent a contact of the flame and its vapor zone with the outer wick tube. The structure uses no chamber to avoid combustion at the outer wick tube, but prevents contact between the flame and wick tube by the air current alone.

The patented structure and the accused structure operate in different ways. The former shuts out combustible air adjacent the outer wick tube; the latter admits sufficient air to prevent impingement of the flame on the outer wick tube. Appellant's lamp designed after the reissue patent will give a full incandescence of the mantle. The accused structure will not. Incandescence of such mantles is governed by the shape of the flame.

We think the District Court rightly held that in view of the spacing of the flame from the wick tube in the prior art both by the use of chambers and detached flame flanges, both resulting in cool outer wick tubes and the avoidance of creeping up of the flame, any later issued patent must be confined to the structure by which it attains the same result and is not entitled to a claim sufficiently broad to cover all structures that serve this function or obtain the result. The court said: "Claims 18, 37, 38, 40 and 41 of the reissue * * * are not confined to specific structure whereby the results are achieved. Instead, they call for a deflector, an air-guiding baffle, a flame-protecting baffle, an air-restricting baffle, to so control the air (claim 18), in such relation to the burner cone and the outer wick tube (claims 37 and 38), spaced from the outer wick tube (claim 40) surrounding and heat insulated from the outer wick tube (claim 41) that certain results will follow. The same results were achieved by the prior art."

 The patented structure follows the chamber type of the prior art, as illustrated by German patent No. 178,757, to Henniges and Dieskau, and No. 199,932 to Boellert and Fellberg. The accused structure is of the detached flame flange type as exhibited in the prior art, United States patents to Holy, No. 929,948; Blankenburg, No. 1,015,988; Fellberg, No. 930,063, and in the prior German patents to Schneider, Nos. 194,244 and 194,245. It is obvious that if we construe the claims sufficiently broadly to cover appellee's structure, we would be impelled to hold that the reissue patent was anticipated by the prior art patents of the detached flame flange type. The court rightly held that the claims in issue must be limited to a specific chamber type of structure, and as so limited they are not infringed by appellee's structure.

Patent No. 1,349,010 relates to a device for cleaning and shaping wicks of the annular type. The invention is said to be especially useful in connection with burners of the nonluminous type, which are employed for the heating of light-giving incandescent mantles, and to enable the user to mechanically trim and shape the wick and at the same time to scrape away any accumulated crusts of carbon deposited on the metal parts of the lamp adjacent the wick. It is so constructed as to mechanically combine with the burner upon which it may be rotated while carrying into effect the cleaning and shaping process.

The device has a tubular body of cylindrical form, from which are cut and bent blades having at their ends flanges carrying downwardly deflected scraping edges, which rest upon the flame flange. A knurled cap on the device is provided with a cylindrical body, the lower edge thereof carrying downwardly extending arms, the ends of which bear upon the flanges so as to hold the ends in true position. The arms are provided with strengthening ribs extending lengthwise thereof. The tubular body is provided with a shoulder in which the upper portion of the tubular body originates. The tubular body fits loosely in the inner wick tube and by virtue of the lateral displacement of its upper portion also fits the annular wick and thereby prevents inward displacement of any parts of the wick during the cleaning and shaping operation. The blades are coextensive in length with the exposed portion of the wick, and the flanges are in length equal to the width of the flame flange. The wick during the cleaning and shaping operation is supported on its inside by the tubular body so as to prevent undesirable distortion. The blades

during the operation of the device travel around the flame flange upon which their flanges rest. The end of the wick takes the shape of the blades, which are formed from a bent portion of the tubular body, the curvature of the arms determining the exact shape of the tip of the wick. The several arms all follow in the same path, being sustained by their flanges which rest upon the flame flange and are held from upward displacement by the arms. Claim 8 of the patent is relied upon.[2]

The only structural limitations in this claim are those of a lower body portion and an upper body portion of a greater diameter than the lower. The other statements of the claim are merely functional. It is conceded that appellee's wick cleaner has the same structural limitations, but it is contended by appellee that the functional requirements of the claim are not met by appellee's structure. The District Court so held and we think the ruling was correct.

Appellant's wick has a distinct beveled or slightly rounded edge curving upwardly and inwardly at its inner top edge. Appellee's wick has a square upper edge. It is obvious from the shape of appellant's wick that its upper edge cannot be shaped while it is down within the wick tubes, hence it must be turned up out of its tubes both for shaping and cleaning.

Appellee's wick is turned up out of its tubes for cleaning, but it is shaped by being turned down to the level of its tubes and brushed in the direction of the threads by using a cloth or finger. If there is any shaping of the inside diameter of appellee's wick, it is done by the inner wick tube.

 The cutting or scraping edges of appellee's cleaner are horizontal so that carbon particles on the horizontal upper edge of the wick may be removed. Any pressure thereon is downward in direction. In appellant's shaper it is obvious that the applied pressure is from the side and downwardly, thus forcing the upper edge of the wick inwardly. For this reason it is quite necessary that the upper edge of the wick have a supporting member so that it will not be pressed out of shape. It is immaterial whether appellee's wick is pressed out of shape by the act of cleaning, for it is reshaped within its tubes when it is again turned down. It is quite evident that appellant's wick can not thus be shaped. The enlarged upper body portion of its cleaner is solely for the purpose of forming a stop shoulder which will contact the inner wick tube and prevent further downward movement of the cleaner. Appellee's wick can not be shaped by its cleaner. We are therefore convinced that appellee's cleaner does not function according to the requirements of claim 8 and that there is no infringement of that claim. Both the claim and appellee's structure, as to structural parts, are answered by German patents, No. 382,050 to Meyer, and No. 69,105 to Diemel, and British patent to Webb, No. 8,311, and those patents, we think, disclose the functional parts of appellant's structure.

Decree affirmed.

---

[2] "8. A wick cleaner having a lower body portion adapted to fit into a wick tube and an upper body portion of greater diameter than the lower body portion, said upper portion being adapted to form the inside diameter of the wick to a predetermined size."